UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

------------------------------------------------------------------ x
GREY OAKS COUNTRY CLUB, INC.,                    :
                                                 :  Case No.:
                      Plaintiff,                 :
                                                 :
       v.                                        :
                                                 :
HALSTATT, LLC, PREMIER PROPERTIES OF             :
SOUTHWEST FLORIDA, INC. d/b/a PREMIER            :
SOTHEBY'S INTERNATIONAL REALTY AND               :
ESTUARY AT GREY OAKS, LTD.,                      :
                                                 :
                      Defendants.                :
------------------------------------------------------------------ x

**COMPLAINT FOR FEDERAL TRADEMARK INFRINGEMENT, FALSE
DESIGNATION OF ORIGIN, FALSE ADVERTISING, UNFAIR COMPETITION
AND DILUTION UNDER THE LANHAM ACT, CYBERSQUATTING UNDER THE
LANHAM ACT, BREACH OF CONTRACT, TRADEMARK DILUTION UNDER
FLORIDA STATUTE § 495.151, DECEPTION AND UNFAIR TRADE PRACTICES
UNDER FLORIDA STATUTE § 501, COMMON LAW TRADEMARK
INFRINGEMENT, COMMON LAW UNFAIR COMPETITION AND A
DECLARATORY JUDGMENT**

Plaintiff Grey Oaks Country Club, Inc. ("GOCC" or "Plaintiff"), as and for its complaint

against defendants Halstatt, LLC ("Halstatt"), Premier Properties of Southwest Florida, Inc. d/b/a

Premier Sotheby's International Realty ("Premier Sotheby's") and Estuary at Grey Oaks, Ltd.

("EAGO") (collectively, the "Defendants"), alleges as follows:

## I.    NATURE OF THE ACTION

1.    GOCC seeks injunctive relief and damages for acts of trademark infringement,

false designation of origin, false advertising, trademark dilution, unfair competition, unfair trade

practices, cybersquatting and breach of contract in violation of the laws of the United States and the State of Florida.  GOCC also seeks a declaratory judgment.

## II.     JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action, pursuant to Section 35 of the Lanham Act (15 U.S.C. § 1121), 28 U.S.C. §§ 1331, 1338 and 2201, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).  GOCC's claims are predicated upon the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 *et seq.*, the Lanham Act, 15 U.S.C. §§ 1125(a) and (d), the Declaratory Judgment Act, 28 U.S.C. § 2201, and substantially related claims under the statutory and common laws of the State of Florida.

3.      Venue is properly found in this District pursuant to 28 U.S.C. § 1391(b) because Defendants are subject to personal jurisdiction within this District, the events giving rise to these claims occurred within this District and the parties to the contract that is the subject of Count Four (i.e., Halstatt and GOCC) agreed to litigate any disputes arising thereunder before this Court.

## III.     THE PARTIES

4.      Plaintiff GOCC is incorporated under Delaware law.  It maintains its principal place of business at 2406 Grey Oaks Drive North, Naples, Florida 34105.  GOCC is the current owner and operator of the Grey Oaks Country Club located in Naples, Florida (the "Club").  The Club is the focal point of two gated residential communities:  the 900-acre Grey Oaks community; and the 350-acre Estuary at Grey Oaks community.  Grey Oaks was the first community that was developed.  Grey Oaks has 734 homesites.  It was followed by the Estuary

at Grey Oaks.  The Estuary at Grey Oaks has 179 homesites.  The development of Grey Oaks commenced in the early 1990s.  It took over 20 years to complete.  GOCC currently has about 800 full dues-paying members.  The Club features three highly-rated golf courses, tennis facilities, a state-of-the-art wellness and fitness center, two clubhouses, a lagoon pool and other amenities.  The Club is situated within the Grey Oaks and the Estuary at Grey Oaks gated communities.

5.     Defendant Halstatt is a limited liability company formed under Delaware law.  Its principal place of business is located at 2600 Golden Gate Parkway, Naples, Florida 34105.  It was the developer of the Grey Oaks Country Club and all of its amenities, the Grey Oaks gated community and the Estuary at Grey Oaks gated community.

6.     Defendant Premier Sotheby's is a corporation formed under the laws of the State of Florida.  Its principal place of business is located at 4001 Tamiami Trail North, Suite 300, Naples, Florida 34103.  It is a licensed real estate sales broker.  Upon information and belief, Premier Sotheby's is part of the Lutgert group of companies ("Lutgert").  For many years, Premier Sotheby's was the sole real estate brokerage firm with offices located on site at the Grey Oaks Country Club.  In June of 2019, it was replaced as the exclusive on-site real estate broker by William Raveis, Inc. ("William Raveis Real Estate").

7.     Defendant EAGO is a limited partnership formed under the laws of the State of Florida.  Upon information and belief, its principal place of business is located at 4200 Gulf Shores Boulevard North, Naples, Florida 34103.  Upon further information and belief, it is engaged in the business of real estate development.  Upon further information and belief, defendant EAGO is part of Lutgert.

3

## IV.   FACTUAL BACKGROUND

### A.   The Development of the Grey Oaks Brand

8.     The founder of the Grey Oaks development was Judy Sproul.  Upon information and belief, Mrs. Sproul was gifted 1,600 acres of undeveloped real estate located at the four corners of Golden Gate Road and Airport Road in Naples.  The Grey Oaks Tract was gifted through a trust that had been created by her father, Barron Collier, Jr.  Upon further information and belief, after she sold two of the corners, Mrs. Sproul decided in the 1980s to develop the 1,250-acre remainder of the property (the "Grey Oaks Tract") as luxury golf courses and residential communities to be known as Grey Oaks and Estuary at Grey Oaks.  The goal was to construct residential communities, country clubs and golf courses of peerless quality and as "best in class" in the United States.

9.     Upon information and belief, a predecessor of defendant Halstatt, known as the Halstatt Partnership, was retained to serve as the developer of the Grey Oaks Tract.  Upon information and belief, Judy Sproul was an officer of Halstatt.  As the developer, Halstatt was engaged to construct a planned community on such property, the focal point of which would be a country club consisting of golf, tennis, social and other club facilities.  The club and golf courses were to be surrounded by lots on which luxury homes would be built.

10.     At or around the same time, a limited partnership was formed under Florida law known as Grey Oaks Country Club Ltd. (the "Partnership").  Upon information and belief, the Partnership held title to the Grey Oaks Tract and all improvements thereon.  Upon further information and belief, defendant Halstatt's predecessor became the limited partner of the Partnership and plaintiff GOCC became the general partner of the Partnership.

4

11.    Contemporaneous with the beginning of work to develop the Grey Oaks Tract, Halstatt's use of the trademark GREY OAKS and the Leaf Logo commenced in Florida, for real estate development services.  Another predecessor of defendant Halstatt, Peninsula Improvement Corp., pursued protection of GREY OAKS and the Leaf Logo, which is registered under Florida Reg. No. T11828.  Within the span of three years, use of this trademark expanded across the U.S. The trademark GREY OAKS and the Leaf Logo are the subject of application U.S. Serial No. 88/658,678.  Attached as Exhibit **A** are copies of the Florida Reg. No. T11828 trademark record, assignment recordal and renewal certificates; and attached as Exhibit **B** are copies of the federal application for the trademark GREY OAKS and the Leaf Logo (published March 3, 2020), which are owned by GOCC.

12.    In December 1992, Halstatt Partnership established in Florida use of the trademark GREY OAKS for real estate development services, as well as golf club and country club services, which mark is registered under Florida Reg. No. T10000000943.  Attached as Exhibit **C** are copies of the Florida state registration record, and assignment certificate; *see also* Exhibit **B** (federal trademark application for GREY OAKS and the Leaf Logo U.S. Ser. No. 88/658,678), owned by GOCC.

13.    Halstatt Partnership also commenced use of the trademarks GREY OAKS COUNTRY CLUB and GREY OAKS and the Leaf Logo at the end of 1992, for golf club and country club services, registered under Florida Reg. Nos. T10000000942 and T10000000941, respectively.  Use of these trademarks also expanded nationally starting at the end of 1992.  The trademark GREY OAKS and the Leaf Logo in relation to golf club and country club services is also the subject of application U.S. Serial No. 88/658,678.  Attached as Exhibit **D** are copies of the Florida state record, and assignment and renewal certificates for the trademarks GREY

OAKS COUNTRY CLUB and GREY OAKS and the Leaf Logo; *see also* Exhibit **B** (federal trademark application for GREY OAKS and the Leaf Logo U.S. Ser. No. 88/658,678), owned by GOCC.

14.     The first GREY OAKS golf course was opened for resident use in 1993.  The "Pine Course" features in its layout cedar and pine tree hammocks, winding berms and over 7,200 yards of rolling fairways.

15.     Further distinguishing the GREY OAKS golf course, club and residential experience to club members and home owners was the plan to have two fully operating 18-hole golf courses open in tandem in the GREY OAKS gated community.  Other Florida golf communities constructed courses in sequence, dependent on residential sales.  Soon after the "Pine Course" opened, the "Palm Course" was ready for use in 1993.  The Palm Course design includes a visually remarkable variety of water features and rock formations, to highlight a well-designed tropical, lush landscape.

16.     The GREY OAKS communities, golf courses and clubs (including the Estuary at Grey Oaks course and club, *i.e.*, the third golf course and second clubhouse) have garnered notoriety for excellence in design, offering challenging courses and providing a remarkable residential experience.  The GREY OAKS communities have been recognized regularly by *Links Magazine, Travel & Leisure Golf* (top 100 golf communities in America), and *Boardroom Magazine* in partnership with *Forbes Travel Guide*.  The GREY OAKS club has been cited in the top one percent of private country clubs in the U.S. and has been included frequently in "Platinum Clubs of America Top 150 Country Clubs List".

17.     Also contributing to the significance of the GREY OAKS brand is the modern style, fabrication quality and luxury finishes employed in the residential homes constructed in the Grey Oaks community for over 25 years.  The elegance and visual appeal of these residences, combined with the exclusivity of the community, have become closely associated with the GREY OAKS brand, dating from as early as the inception of the Grey Oaks Tract development. Grey Oaks residences range in size from 2,400 square foot villas to estates exceeding more than 9,000 square feet, with the added privacy and security of a gated community.  Grey Oaks residents and prospective buyers from throughout the U.S. and internationally have come to associate the GREY OAKS community, club and golf courses with excellence and exclusivity in design and in the exceptional experience of residing there.

18.     In 2002, the GREY OAKS brand and community expanded further, to include the Estuary at Grey Oaks golf course, followed by a second clubhouse in 2003.  The Estuary course and residences maintain the design aesthetic of the GREY OAKS brand to a smaller, more exclusive community, and the Estuary grounds include a gated nature preserve.

19.     To foster prospective buyer and member interest in the GREY OAKS residential community and club, it was a component of the GREY OAKS development plan to establish an onsite realty agency office.  The Lutgert Companies registered the domain name www.greyoaks.com on March 2, 1998.  Content for this website promoting the GREY OAKS community residential properties and club was first featured on the site as early as March 1998. Attached as Exhibit **E** is a copy of the domain name registration record.

20.     By at least 2012, the www.greyoaks.com site displayed reference to "Grey Oaks Realty, Inc.", offering real estate agency services to prospective home buyers for the Grey Oaks

and Estuary at Grey Oaks communities.  Protection of the trademark GREY OAKS and the Leaf

Design in connection with real estate agency services is also the subject of application U.S.

Serial No. 88/658,678 owned by GOCC, attached as Exhibit **A** to this Complaint.

21.     The Lutgert Companies subsequently registered the domain name

www.estuaryatgreyoaks.com on February 4, 2000.  Content regarding the Estuary at Grey Oaks

community and club was first made available as early as August 2003.  Attached as Exhibit **F** is

a copy of the domain name registration record.

22.     On March 9, 2009, the Lutgert Companies registered the domain name

www.estuarygreyoaks.com.  Content regarding the Estuary at Grey Oaks community and club

was first made available as early as March 2004.  Attached as Exhibit **G** is a copy of the domain

name registration record.

23.     On August 1, 2016, the Lutgert Companies also registered the domain names

www.estuary-greyoaks.com and www.greyoaks-estuary.com.  Content regarding the Estuary at

Grey Oaks community and club was first made available on these sites as early as August 2018.

Attached as Exhibit **H** is a copy of the domain name registration record.

24.     The Lutgert Companies registered the domain name www.greyoaksestuary.com

on September 6, 2016.  Content regarding the Estuary at Grey Oaks community and club was

first made available as early as January 2017.  Attached as Exhibit **I** is a copy of the domain

name registration record.

25.     Through consistent use and promotion of the trademarks GREY OAKS, GREY

OAKS and Leaf Design and GREY OAKS COUNTRY CLUB in Florida and nationwide for

more than 25 years, considerable goodwill and brand recognition have been built, in connection with luxury residential golf communities and clubs.  Realty agency marketing campaigns to promote GREY OAKS residential property sales, for which the "greyoaks'" formative domain names first registered by the Lutgert Companies are an integral part, have been in place and active nationally for decades, including in print media, on websites, and on social media.  These consistent and pervasive marketing and promotional efforts, in combination with numerous accolades recognizing the high quality design and exclusivity of the GREY OAKS residences and golf courses, as well as the dedication to excellence in providing outstanding club membership services, have all contributed to create in consumer minds a distinctive impression linked to the GREY OAKS brand and a single source.

### B.    **The Amended Turnover Agreement**

26.    Halstatt's predecessor and GOCC entered into an Exchange Agreement, dated April 1992 (the "Exchange Agreement").  Upon information and belief, pursuant to said agreement, Halstatt's predecessor agreed to transfer and convey to the Partnership as a capital contribution the Grey Oaks Tract and all of the improvements to be made thereon (i.e., the Club).

27.    Pursuant to a certain Turnover Agreement, dated August 5, 2010 (the "Initial Turnover Agreement"), the Partnership, GOCC and Halstatt's predecessor agreed to the future transfer of ownership and control of the Club facilities and improvements (and all assets of the Partnership) to GOCC.  GOCC, in turn, was to eventually be owned and operated by the equity members of the Club (the "Equity Members").  The parties intended that -- upon substantial completion of the development of the Club, the Grey Oaks gated community and the Estuary at

Grey Oaks gated community -- all of the assets of the Partnership would be transferred to

GOCC. At such point, Halstatt, the developer, would receive its final payments and walk away.

28.      Upon information and belief, both defendant Halstatt, as the developer of Grey

Oaks, and defendant Premier Sotheby's, as the on-site real estate broker, in (a) selling lots and/or

luxury homes in the Grey Oaks gated community and the Estuary at Grey Oaks gated community

and (b) selling equity golf and sports memberships in the Club during the more than twenty year

period of the Club's construction and development represented, both orally and in writing, to all

of the purchasers of lots, homes and equity memberships that it was the intent of the developer,

upon substantial completion of the development of the Club and the two residential gated

communities, to transfer ownership and management of the Grey Oaks Tract and the Club (and

all of its assets) to the Equity Members of the Club via GOCC. Upon information and belief,

such transfer was a material consideration underlying the decision of Club members to buy

property, build homes and live at Grey Oaks or the Estuary at Grey Oaks and join the Club.

29.      On or about October 1, 2014, defendant Halstatt, the Partnership and GOCC

entered into a new agreement entitled "Agreement Regarding Turnover" (the "Amended

Turnover Agreement"). The Amended Turnover Agreement superseded the Exchange

Agreement and the Initial Turnover Agreement.

30.      The Amended Turnover Agreement called for certain final payments to be made

by GOCC to Halstatt, including $7.55 million from the prospective sales of 88 remaining unsold

equity golf memberships, $300,000 in respect of remaining unsold sports club memberships and

all proceeds from the issuance of non-equity sports memberships to owners of property in a

10

senior living area known as the Moorings Facility (collectively, the "Payments In Lieu of Proceeds").

31.    The Amended Turnover Agreement called for (a) the golf memberships portion of the Payments In Lieu of Proceeds to be made in sixteen equal installments, commencing on January 2, 2015 and (b) the sports memberships portion of the Payments In Lieu of Proceeds to be made in four equal installments of $75,000 each, commencing on January 2, 2015.

32.    In exchange for the Payments In Lieu of Proceeds, Halstatt agreed to take certain actions in furtherance of effecting the intended transfer of the Partnership's assets to GOCC. Among such actions, Halstatt agreed to assign to GOCC on or before October 1, 2015 all of the Club's intellectual property rights established and exploited over the more than twenty years in relation to the Grey Oaks brand, including for promoting and developing the Club, the Grey Oaks gated community and the Estuary at Grey Oaks gated community and selling lots, homes and Club memberships.  Such intellectual property rights included all trademarks (registered and unregistered), tradenames and related intellectual properties rights that had been created over the years.  Halstatt (and/or its predecessors) obtained four registrations for the trademarks Grey Oaks and the Leaf Logo, Grey Oaks, Grey Oaks Country Club and Grey Oaks Country Club's Leaf Design) with the State of Florida.  Halstatt (and/or its predecessors) also established various unregistered rights in and to the Grey Oaks trademarks at common law.  The scope of the intellectual property to be transferred was all-inclusive and extended to any domain names associated with such marks (collectively, the "Intellectual Property Assignment").  Absent from the Amended Turnover Agreement was any identified exclusions of certain intellectual property from the transfer.

33.     The Intellectual Property Assignment was, however, subject to certain then-current licenses that had been granted to a few specified licensed users.  Among the then-current licensed users who were identified by name in the Amended Turnover Agreement were the two property owner associations for Grey Oaks and the Estuary at Grey Oaks respectively, and certain affiliates of Lutgert.

34.     One of the licensed users at the time of the Amended Turnover Agreement was defendant Premier Sotheby's.  Premier Sotheby's at such time served as the exclusive on-site real estate broker for the Grey Oaks and the Estuary at Grey Oaks gated communities.  Premier Sotheby's was under contract to serve as the exclusive on-site real estate broker, but only through June 1, 2019 (the "On-Site Termination Date").

35.     The Amended Turnover Agreement provided that, upon Halstatt's receipt of all the Payments In Lieu of Proceeds, the Partnership would be terminated and sole management and ownership of the Club (and all of its assets) would be transferred to GOCC.

36.     All Payments In Lieu of Proceeds were duly made.  After Halstatt's receipt of such monies, sole ownership and control of the Club (and all of its assets) were transferred to GOCC in 2014.

C.     **Premier Sotheby's Historical Role as the On-Site Real Estate Broker**

37.     A real estate sales center located in the Club's clubhouse was created in 2006.  Premier Sotheby's was designated as the exclusive real estate broker to operate such sales office.

38.     In 2009, a second real estate sales office was created on-site.  Such office was located within the Estuary at Grey Oaks gated community.  Premier Sotheby's was designated as the exclusive real estate broker to operate such sales office.

39.     In 2018, the two real estate sales offices were combined into a single sales gallery located in the Club's Wellness Center.  Such office was occupied by Premier Sotheby's until June 1, 2019.

40.     Over the more than 20-year period of time during which Halstatt served as the developer of the Club, the Grey Oaks gated community and the Estuary at Grey Oaks gated community, Premier Sotheby's served as the exclusive on-site real estate broker.  As noted heretofore, during such tenure, Halstatt and/or Premier Sotheby's established certain Grey Oaks trademark rights, adopted certain tradenames and registered certain domain names incorporating in whole or in part those trademarks and tradenames (collectively, the "Grey Oaks Domain Names").  The Grey Oaks Domain Names have been utilized by Premier Sotheby's to drive visitors to Premier Sotheby's website.  Such website content featured luxury homes and homesites in the Grey Oaks and Estuary at Grey Oaks residential gated communities, including those for which Premier Sotheby's was the listing broker.

41.     By virtue of the parties' aforementioned contractual agreements (including the Exchange Agreement, the Initial Turnover Agreement and the Amended Turnover Agreement), GOCC was the beneficial owner of all such trademarks, trade names and domain names used and associated with the Grey Oaks brand.  GOCC was identified in the Amended Turnover Agreement as the only recipient of the Grey Oaks trademarks and trade names, which serve as an indication to current and prospective residents of a single source for the services associated with

the Grey Oaks brand.  GOCC is the only party to whom all Grey Oaks intellectual property was

to be transferred, upon the substantial completion of the development of the Club and the two

planned gated communities.

### D.    **The Assignment of the Intellectual Property**

42.    Pursuant to and in performance of the Amended Turnover Agreement, Halstatt,

effective October 20, 2015, assigned "all of its right and title" to the trademarks GREY OAKS

and the Leaf Logo, GREY OAKS, GREY OAKS COUNTRY CLUB and the Leaf Design

(hereinafter the "Grey Oaks Marks") along with the attendant goodwill of the business for which

the marks were used to GOCC, thereby effecting that portion of the Intellectual Property

Assignment (the "October 2015 Assignment").  Such Assignment was thereafter recorded with

the Registration Section of the Division of Corporations for the State of Florida on December 15,

2015 (the "Recordation").

### E.    **The Expiration of Premier Sotheby's License in and to the Grey Oaks Trademarks and Related Domain Names**

43.    As expressly recognized in the Amended Turnover Agreement, Premier Sotheby's

engagement as the Club's exclusive on-site real estate broker ended on June 1, 2019.

44.    In advance of the termination of Premier Sotheby's on-site license, GOCC issued

a request for proposals ("RFP").  By such RFP, GOCC invited Premier Sotheby's and other real

estate brokers in the Naples area to submit bids to become the Club's on-site real estate broker

commencing on June 1, 2019.

14

45.     In response to the RFP, Premier Sotheby's submitted a bid.  In its bid, Premier Sotheby's represented that, over the period of January 1 – November 1, 2018, it was by far the leading broker by a significant margin in terms of both sales and listings for Grey Oaks properties valued at over $3 million.  It also reported that it was the leading broker by a significant margin for both sales and listings during that same period, with closed sales of Grey Oaks properties valued at around $71 million.  It also highlighted its global online approach to marketing its listings, including its Grey Oaks listings.

46.     Premier Sotheby's, in its bid, touted that its "website attracts more consumers to search, view and query than any other luxury real estate website" and "[o]ur approach is to create results-oriented SEO (search engine optimization) and SEM (search engine marketing) strategies that highlight luxury real estate and lifestyle terms."

47.     Premier Sotheby's also stated that all of its various domain name websites are "redirected to one website where we blend the desirable Grey Oaks lifestyle along with featuring our active real estate property listings."  It stressed its "Website Dominance."

48.     Following its assessment of the various bids received in response to the RFP, GOCC selected William Raveis Real Estate to serve as the exclusive on-site real estate broker for the period of June 1, 2019 through May 31, 2024.

F.     **Premier Sotheby's Unlawful License to Defendant EAGO**

49.     Following the October 1, 2015 Assignment by which ownership of and title to the Grey Oaks Florida State trademark registrations were assigned by Halstatt to GOCC, Halstatt

15

executed a license agreement with co-defendant EAGO, dated November 6, 2015 (the "Unlawful License").

50.    By the Unlawful License, Halstatt purported to license to EAGO the right to use the trademarks GREY OAKS, GREY OAKS COUNTRY CLUB and ESTUARY AT GREY OAKS on a worldwide basis, including on the Internet, with respect to "Golf residential community real estate development services."

51.    The foregoing license was conferred within just five weeks of the October 1, 2015 Assignment.

52.    The Unlawful License was signed on behalf of Halstatt by its Chief Executive Officer, Katherine C. Sproul, Judy Sproul's daughter.  Such license was executed notwithstanding the fact that all rights, title and interest in and to the Grey Oaks Florida State trademarks and attendant goodwill had transferred to and were exclusively owned by GOCC, not Halstatt.

53.    Katherine Sproul not only signed the Unlawful License on behalf of Halstatt, she had also signed, on behalf of Halstatt, the four October 20, 2015 Assignments that were recorded.  Accordingly, she was aware of the fact that Halstatt had nothing to license to EAGO at the time of the Unlawful License, because ownership of the Grey Oaks Marks had been irrevocably transferred to GOCC just five weeks earlier.

54.    The November 6, 2015 Unlawful License was not a then-current license and EAGO was not a then-current licensee of any Grey Oaks Marks at the time of the execution of

the Amended Turnover Agreement in October of 2014.  Accordingly, the Unlawful License had

not been grandfathered as a prior permissible use.

G.    **GOCC's Demand That Defendants Cease Use of the Grey Oaks Trademarks and Surrender the Grey Oaks Domain Names**

55.    By letter, dated July 17, 2019, Michael Stott, GOCC's General Manager, wrote to

Judy Green, Premier Sotheby's CEO.  He reminded her that GOCC was the sole owner of the

Grey Oaks Marks and the intellectual property that had been developed over the 20 plus years of

Grey Oaks' development as a luxury real estate and country club community.

56.    He noted that Premier Sotheby's had impermissibly continued after June 1, 2019

to make use of internet domain names and URLs that incorporated the Grey Oaks Marks, namely

www.estuary-greyoaks.com, www.estuaryatgreyoaks.com, www.estuarygreyoaks.com,

www.greyoaks.com, www.greyoaks-estuary.com and www.greyoaksestuary.com.  Mr. Stott

reminded Ms. Green that Premier Sotheby's license to utilize such trademarks and domain names

was tied to its status as the exclusive on-site real estate broker at the Club, which had come to an

end on June 1, 2019.  Accordingly, Mr. Stott requested that Premier Sotheby's cease and desist

from further use of the trademarks and arrange for the transfer of the domain names to GOCC.

57.    Premier Sotheby's responded to Mr. Stott through its lawyers by letter, dated July

24, 2019.  By such letter response, Premier Sotheby's claimed it was entitled to continue its use

of the Grey Oaks trademarks and the associated domain names by reason of the Unlawful

License that Halstatt issued on November 6, 2015 to EAGO.  Premier Sotheby's maintained that

such November 6, 2015 License recognized Halstatt's, Lutgert's and Premier Sotheby's

continued rights in and to the Grey Oaks Marks and the websites.

58.     GOCC responded, via its counsel, on October 18, 2019.  GOCC pointed out that, in compliance with and in performance of the Amended Turnover Agreement, Halstatt had, effective on October 1, 2015, assigned all rights and title in and to the Grey Oaks Marks to GOCC and furthermore had recorded such assignment on December 8, 2015.

59.     GOCC pointed out that the defendant Halstatt had no ownership interest in the marks it purported to license to EAGO via the November 6, 2015 License Agreement.  It also pointed out that such fact must have been obvious to Halstatt inasmuch as the Turnover Agreement, the October 1, 2015 Assignment and the November 6, 2015 Unlawful License were all signed by Katherine Sproul, as CEO on behalf of Halstatt.  The latter two documents were signed by Ms. Sproul within a matter of a few weeks of one another.

60.     GOCC also noted that EAGO had not been identified as a then-current licensee or user of any of the Grey Oaks Marks at the time of the Amended Turnover Agreement.  In fact, it was not a licensee or user at such time.

61.     Based on the foregoing, GOCC renewed its demand that the Defendants cease use of the Grey Oaks Marks and assign the domain names to GOCC.

62.     By letter, dated November 22, 2019, the Defendants collectively responded through their counsel.  The Defendants took the position that their prior assignment to GOCC was invalid.  They also maintained that, assuming such assignment was valid, it was limited in scope and excluded the "Estuary" marks or the domain names in connection with real estate sales.  They asserted that "Premier/Lutgert" is the owner of the "Estuary" marks covering real estate sales services, "by virtue of being the developer of the site".  Defendants also asserted GOCC had abandoned any rights it had in the "Estuary" marks.

63.    The positions taken by Defendants in their November 22, 2019 letter are utterly without merit.  The so-called "Estuary" marks were plainly used by Halstatt as the developer of Grey Oaks and the two gated residential communities.  These rights were an essential part of the Grey Oaks' development and the promotional efforts made over more than 20 years to sell lots, homes and Club memberships.  The use of the so-called Estuary marks by Defendants was a licensed use that ended on June 1, 2019.  Accordingly, GOCC never abandoned any such marks after becoming the sole owner of the Club and acquiring all of the Club's intellectual property pursuant to the Amended Turnover Agreement.

## V.    CAUSES OF ACTION

## VI.    FIRST COUNT
### (Trademark Infringement Under 15 U.S.C. § 1114(a))

1-63.    Plaintiff hereby incorporates by reference paragraphs 1 through 63 above as if fully set forth and realleged herein as paragraphs 1 through 63 of the First Count of the Complaint.

64.    Defendants' use of the Grey Oaks Marks is intended to cause, has caused and is likely to continue to cause confusion, mistake and deception among the general consuming public and the trade as to whether real estate brokerage and real estate development services marketed or promoted using the Grey Oaks Marks (including online) originate from, and/or are affiliated with, sponsored by, or endorsed by GOCC and/or the Grey Oaks Property Owners Association and/or the Estuary at Grey Oaks Property Owners Association.

65.     Upon information and belief, Defendants have acted with knowledge of GOCC's superior ownership interests in and to the Grey Oaks Marks and with the deliberate intention to unfairly benefit from the incalculable goodwill symbolized thereby.

66.     Defendants' acts constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

67.     Upon information and belief, by their acts, Defendants have made and will make substantial profits and gains to which they are not entitled in law or at equity.

68.     Upon information and belief, Defendants intend to continue their infringing acts, and will continue to willfully infringe the Grey Oaks Marks, unless restrained by this Court.

69.     As a direct and proximate cause of the aforementioned infringements, GOCC has been harmed and suffered monetary damages in an amount not as yet determined.  Plaintiff lacks an adequate remedy at law.

## SECOND COUNT
### (Unfair Competition, False Designation of Origin and False Description of Fact Under 15 U.S.C. § 1125(a))

1-69.   Plaintiff hereby incorporates by reference paragraphs 1 through 69 above as if fully set forth and realleged herein as paragraphs 1 through 69 of the Second Count of the Complaint.

70.     Defendants' use of the Grey Oaks Marks and other designations, and indicia, as well as their association with the Grey Oaks name and goodwill established over more than twenty-five years, is intended, and is likely, to confuse, mislead and deceive consumers, the

20

public and the trade as to the origin, source, sponsorship, association, or affiliation of real estate brokerage and real estate development services promoted or marketed using the Grey Oaks Marks (including online), and is intended, and is likely, to cause such parties to believe in error that the Defendants' real estate brokerage and real estate development services promoted or marketed using the Grey Oaks Marks (including online) have been authorized, sponsored, approved, endorsed or licensed by GOCC and/or the Grey Oaks Property Owners Association and/or the Estuary at Grey Oaks Property Owners Association, or that Defendants are in some way affiliated with GOCC and/or the two aforementioned property owners associations, and misrepresents the nature, characteristics and qualities of their services and commercial activities, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

71.     Defendants' aforesaid unauthorized use of the Grey Oaks Marks falsely suggests that they are associated with GOCC in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

72.     Defendants' aforesaid unauthorized use of the Grey Oaks Marks throughout their online and other marketing and promotional activities has caused customers to believe that Defendants are affiliated with or sponsored by GOCC and/or the two aforementioned property owners' associations or vice versa, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

73.     Defendants' aforesaid statements are materially false and misleading statements of fact, and were made in commercial advertising or promotion of real estate brokerage and/or real estate development services, in interstate commerce (including online) in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

74.     Upon information and belief, by their aforementioned acts, Defendants have made and will continue to make substantial profits and gains to which they are not entitled in law or at equity.

75.     Upon information and belief, Defendants intend to continue their willful infringing acts, unless restrained by this Court.

76.     As a direct and proximate result of the aforesaid unlawful actions of the Defendants, Plaintiff has been harmed and suffered monetary damages in an amount not yet determined, but for which Plaintiff has no adequate remedy at law.

## THIRD COUNT
### (Trademark Dilution Under 15 U.S.C. § 1125(c))

1-76.   Plaintiff hereby incorporates by reference paragraphs 1 through 76 above as if fully set forth and realleged herein as paragraphs 1 through 76 of the Third Count of the Complaint.

77.     The Grey Oaks Marks are distinctive and famous trademarks within the meaning of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

78.     Defendants' activities as alleged herein constitute dilution of the distinctive quality of the Grey Oaks brand and Grey Oaks Marks in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

79.     Upon information and belief, the acts of trademark dilution by the Defendants have been done willfully and deliberately and Defendants have profited and been unjustly enriched by the diversion of interested real estate buyers resulting in real property sales that

would not otherwise have been closed or otherwise completed by the Defendants but for their unlawful conduct.

80.    Unless enjoined by the Court, Defendants will continue to infringe Plaintiff's rights and to dilute the Grey Oaks Marks.

81.    Plaintiff is entitled to an injunction restraining Defendants, their agents and employees, and all persons acting in concert with any one or more of them, from engaging in any of the foregoing acts or any further or different acts in violation of Plaintiff's rights under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), pursuant to Section 34 of the Act, 15 U.S.C. § 1116.

82.    Plaintiff has suffered damages as a direct and proximate result of the infringing acts of Defendants and is entitled to recover compensatory, statutory and punitive damages from Defendants in an amount to be determined at trial.  Plaintiff is further entitled to recover any profits from Defendants resulting from their acts of infringement, along with costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

## FOURTH COUNT
### (Cybersquatting Under the Lanham Act, 15 U.S.C. § 1125(d))

1-83.    Plaintiff hereby incorporates by reference paragraphs 1 through 82 above as if fully set forth and realleged herein as paragraphs 1 through 82 of the Fourth Count of the Complaint.

83.    On information and belief, one or more of the Defendants have registered or caused to be registered the following six domain names:  www.estuary-greyoaks.com;

www.estuaryatgreyoaks.com; www.estuarygreyoaks.com; www.greyoaks.com; www.greyoaks-estuary.com; and www.greyoaksestuary.com (collectively, the "Grey Oaks Domain Names").

84.    Defendants have trafficked in the Grey Oaks Domain Names.

85.    Defendants have used and continued to use the Grey Oaks Domain Names.

86.    Defendants have utilized results-oriented SEO (search engine optimization) and SEM (search engine marketing) strategies to drive visitors accessing the Grey Oaks Domain Names to the website of defendant Premier Sotheby's in order to generate real estate sales and listings for properties at the Grey Oaks and Estuary at Grey Oaks residential gated communities.

87.    The Grey Oaks Marks were in prior use by GOCC's predecessor/assignor of such marks before Defendants' registration, trafficking in and use of the Grey Oaks Domain Names.

88.    The Grey Oaks Marks (including the Grey Oaks and Estuary at Grey Oaks word marks) were distinctive at the time of Defendants' registration, trafficking in or use of the Grey Oaks Domain Names.

89.    The Grey Oaks Domain Names in current use by Defendants are identified with or confusingly similar to the Grey Oaks Marks belonging to Plaintiff.

90.    Prior to registering, causing to be registered, trafficking in, or using the Grey Oaks Domain Names, Defendants had actual knowledge of Plaintiff's superior rights in and to the Grey Oaks Marks by reason of Halstatt's contractual obligation to transfer ownership of such marks to GOCC upon substantial completion of the development of the Club and the two gated communities.

91.     The Defendants' use of the Grey Oaks Domain Names infringes upon Plaintiff's prior and/or superior rights in the Grey Oaks Marks.

92.     Defendants have had and have a bad faith intent to profit from their registrations and continued use of the Grey Oaks Domain Names in that they intend to trade upon the reputation and goodwill associated with the prior use and established rights in the Grey Oaks Marks now owned by Plaintiff.

93.     Defendants intended and continue to intend to divert customers from Plaintiff's and/or William Raveis' websites and domain names to the infringing Grey Oaks Domain Names registered and used by Defendants, thereby causing harm to Plaintiff and its goodwill associated with the Grey Oaks Marks.

94.     Continued use by the Defendants of the Grey Oaks Domain Names is likely to cause confusion among consumers in utilizing the competing services of Plaintiff, William Raveis and Defendants in violation of 15 U.S.C. § 1125(d).

95.     Upon information and belief, Defendants' use of the Grey Oaks Domain Names has caused actual confusion among consumers interested in purchasing real estate in the Grey Oaks and Estuary at Grey Oaks residential communities and utilizing the competing services of Defendants, Plaintiff and those of William Raveis.

96.     Defendants' use of the Grey Oaks Domain Names has caused and continues to cause harm to Plaintiff's goodwill and has created and continues to create a likelihood of confusion among consumers that has proximately and directly caused harm and monetary damages to Plaintiff in violation of 15 U.S.C. § 1125(d).

97.    Unless temporarily and permanently restrained by this Court, Defendants' acts will immediately and irreparably injure Plaintiff's goodwill, cause Plaintiff monetary harm and cause confusion in the marketplace with regard to the source of Defendants' real estate brokerage and/or real estate development services.

**FIFTH COUNT**
**(Breach of the Amended Turnover Agreement as to Defendant Halstatt)**

1-97.    Plaintiff hereby incorporates by reference paragraphs 1 through 97 above as if fully set forth and realleged herein as paragraphs 1 through 97 of the Fifth Count of the Complaint.

98.    The Amended Turnover Agreement is a valid and binding agreement between defendant Halstatt and the Plaintiff.

99.    Plaintiff has dutifully performed its obligations under the Amended Turnover Agreement, including making the Payments In Lieu of Proceeds.

100.    Pursuant to said Agreement, Halstatt was obligated to transfer and assign to Plaintiff all the assets of the Partnership, including all of the Intellectual Property Rights that had been created by the Defendants over more than 20 years in (a) planning, developing and constructing the Club, the Grey Oaks gated community and the Estuary at Grey Oaks gated community, (b) selling lots, homes, equity golf memberships and equity sports memberships, and (c) engaging in related marketing and promotional efforts.

101.    Defendant Halstatt has materially breached the Amended Turnover Agreement in the following respects:

26

(a)    By its recent repudiation of its October 2015 Assignment and its 2015 Recordation of the Grey Oaks Marks;

(b)    By failing to assign all rights, title and interest in and to all intellectual property rights to which GOCC is contractually entitled, including any and all common law marks (including any Estuary at Grey Oaks Marks) and any registered domain names incorporating or making use of any Grey Oaks Marks;

(c)    By entering into the Unlawful License Agreement with EAGO purporting to license EAGO to use certain Grey Oaks Marks as to which Halstatt had no ownership or other rights; and

(d)    By continuing to use the Grey Oaks Marks and the Grey Oaks Domain Names.

102.    As a direct and proximate result of the foregoing material breaches of contract, GOCC has suffered harm and monetary damages in an amount not yet determined.

## SIXTH COUNT
### (State Trademark Dilution – Fla. Stat. § 495.151)

1-102.    Plaintiff hereby incorporates by reference paragraphs 1 through 102 above as if fully set forth and realleged herein as paragraphs 1 through 102 of the Sixth Count of the Complaint.

103.    Defendants' unauthorized use of the Grey Oaks Marks and the Grey Oaks Domain Names dilutes the distinctive quality of the Grey Oaks and Estuary at Grey Oaks word marks, which gradually had been built up over the past 25 years.  Further unauthorized use is willfully intended to (a) trade on GOCC's reputation and goodwill, (b) lessen the capacity of the Grey Oaks Marks to identify and distinguish GOCC's services and those of William Raveis Real Estate (GOCC's exclusive onsite real estate broker), and (c) dilute the distinction of said marks, all in violation of Fla. State § 495.151.

104.     As a direct and proximate result of said actions in dilution of the Grey Oaks Marks, GOCC has suffered harm and monetary damages in an amount not yet determined.

## SEVENTH COUNT
### (Florida Deception and Unfair Trade Practices Act, Fla. Stat. § 501)

1-104.   Plaintiff hereby incorporates by reference paragraphs 1 through 104 above as if fully set forth and realleged herein as paragraphs 1 through 104 of the Seventh Count of the Complaint.

105.     Defendants have engaged in unfair and deceptive acts and practices by initiating and using the Grey Oaks Marks in connection with the sale and promotion of Premier Sotheby's real estate brokerage services and the sale and promotion of EAGO real estate development services in the State of Florida, thereby creating a likelihood of public confusion as to the source, endorsement and sponsorship of said services.

106.     Defendants' deceptive acts and practices have injured Plaintiff.

107.     Defendants' deceptive acts and practices offend the public and are unethical, oppressive and unscrupulous, thereby affecting trade and commerce now and in the future both within the State of Florida and elsewhere.

108.     As a direct and proximate result of said deceptive acts and unfair trade practices, Plaintiff has been harmed and has suffered monetary damages in an amount not yet determined.

## EIGHTH COUNT
### (Common Law Trademark Infringement)

1-108.  Plaintiff hereby incorporates by reference paragraphs 1 through 108 above as if fully set forth and realleged herein as paragraphs 1 through 108 of the Eighth Count of the Complaint.

109.     GOCC owns all rights, title and interest in and to the Grey Oaks Marks, including all common law rights in said marks and any Estuary marks.  Such marks are distinctive.

110.     The aforementioned acts of the Defendants constitute trademark infringement in violation of the common law of the State of Florida.

111.     Upon information and belief, by said acts, Defendants have made and will make substantial profits and gains to which they are not in law or at equity entitled.

112.     Upon information and belief, Defendants intend to continue their willfully infringing acts, unless restrained by this Court.

113.     As a direct and proximate result of said infringement, Plaintiff has suffered harm and suffered monetary damages in an amount not yet determined.  Plaintiff has no adequate remedy of law.

## NINTH COUNT
### (Common Law Unfair Competition)

1-113.  Plaintiff hereby incorporates by reference paragraphs 1 through 113 above as if fully set forth and realleged herein as paragraphs 1 through 113 of the Ninth Count of the Complaint.

114.    The aforementioned acts of the Defendants constitute unfair competition in violation of the common law of the State of Florida.

115.    Upon information and belief, by their acts, Defendants have made and will continue to make substantial profits and gains to which they are not in law or at equity entitled.

116.    Upon information and belief, Defendants intend to continue their willfully infringing acts and continue to engage in unfair competition, unless restrained by this Court.

117.    As a direct and proximate result of such unfair competition, Plaintiff has suffered harm and suffered monetary damages in an amount not yet determined.  Plaintiff does not have a adequate remedy of law.

## TENTH COUNT
### (Declaratory Judgment)

1-117.  Plaintiff hereby incorporates by reference paragraphs 1 through 117 above as if fully set forth and realleged herein as paragraphs 1 through 117 of the Tenth Count of the Complaint.

118.    Plaintiff seeks a declaratory judgment declaring the following:

(a)    The Amended Turnover Agreement is a binding and fully enforceable agreement;

(b)    Pursuant to the Amended Turnover Agreement, GOCC is beneficially and legally entitled to an assignment of all the intellectual property rights created by Defendants over the course of the past twenty-eight years in developing, selling and promoting the Club, golf equity and sports equity memberships in the Club, lot sales and home sales in the Grey Oaks and Estuary at Grey Oaks gated communities (including the registered and unregistered Grey Oaks Marks and the Grey Oaks Domain Names);

(c)     GOCC has not abandoned any of its beneficial or actual intellectual property rights in or to the registered and unregistered Grey Oaks Marks and the Grey Oaks Domain Names;

(d)     GOCC stepped into the shoes of Halstatt, as the assignor of all the intellectual property rights in and to the registered and unregistered Grey Oaks Marks and the Grey Oaks Domain Names;

(e)     Neither Halstatt nor Lutgert and/or Premier Sotheby's is possessed of any rights in or to the registered and unregistered Grey Oaks Marks (including the so-called Estuary at Grey Oaks Marks);

(f)     The Assignment is valid and enforceable;

(g)     GOCC is the owner of all rights in the so-called Estuary Marks;

(h)     The November 6, 2015 License by and between Halstatt and EAGO is invalid and a nullity;

(i)     EAGO was not a grandfathered licensee or user of any of the Grey Oaks Marks under the Amended Turnover Agreement; and

(j)     EAGO is not possessed of any rights in or to the registered and unregistered Grey Oaks Marks (including the so-called Estuary at Grey Oaks Marks).

## **PRAYER FOR RELIEF**

WHEREFORE, GOCC demands judgment against Defendants as follows:

1.     As to Counts One and Two, judgment in Plaintiff's favor and (a) a finding that Defendants have willfully infringed Sections 32 and 43(a) of the Lanham Act (15 U.S.C. §§ 1114 and 1125(a)); (b) the granting of an injunction preliminarily and permanently enjoining and restraining the Defendants and all persons or entities acting in concert with them from advertising, promoting, offering for sale or providing any services or products which bear or make use of the registered and unregistered Grey Oaks Marks or any other marks that are

substantially or confusingly similar to the registered and unregistered Grey Oaks Marks and engaging in any other activities constituting an infringement of any of the Grey Oaks Marks registered and unregistered (including the so-called Estuary Marks); (c) an order directing the Defendants to account and pay over to GOCC all profits realized by their wrongful acts and directing that such profits be trebled in accordance with Section 35 of the Lanham Act, 15 U.S.C. § 1112; (d) an order, at Plaintiff's election, awarding GOCC statutory damages in accordance with Section 35 of the Lanham Act, 15 U.S.C. § 1117; (e) an award of GOCC's actual damages in accordance with Section 35 of the Lanham Act and (f) an award of GOCC's costs and attorney's fees and investigation fees and expenses to the full extent authorized by or provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117;

2.    As to Count Three, judgment in Plaintiff's favor, and (a) an award of compensatory, statutory and punitive damages, (b) an award of costs and attorney's fees, and (c) the grant of injunctive relief;

3.    As to Count Four, an order requiring Defendants to (a) remove from their websites all the Grey Oaks Domain Names, all advertising, promotional and marketing materials bearing or incorporating any of the registered or unregistered Grey Oaks Marks (including the so-called Estuary Marks), and (b) transfer of the Grey Oaks Domain Names to GOCC;

4.    As to Count Five, judgment in Plaintiff's favor and an award of monetary damages and an award of costs and attorney's fees;

5.    As to Count Six, judgment in Plaintiff's favor and an award of monetary damages in respect of Defendants' dilution of the registered and unregistered Grey Oaks Marks (including the so-called Estuary Marks);

6. As to Count Seven, judgment in Plaintiff's favor and an award of monetary damages in respect of Defendants' violation of Florida Statute § 501;

7. As to Count Eight, judgment in Plaintiff's favor and an award of monetary damages in respect of Defendants' infringement and the grant of injunctive relief;

8. As to Count Nine, judgment in Plaintiff's favor and an award of monetary damages in respect of Defendants' unfair competition and the grant of injunctive relief;

9. As to Count Ten, judgment in Plaintiff's favor and the issuance of the declaratory relief sought in Count Ten;

10. An award of attorney's fees and costs to the extent of Plaintiff's entitlement thereto under applicable law;

11. An award of pre-judgment and post-judgment interest to the extent of Plaintiff's entitlement thereto under applicable law; and

12. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

**PLAINTIFF GREY OAKS COUNTRY CLUB INC.**

Dated:  March 3, 2020              By s/Eugene P. Murphy
                                   Eugene P. Murphy, Esq.
                                   ROBINSON & COLE LLP
                                   777 Brickell Avenue, Suite 680
                                   Miami, FL  33131
                                   Tel:    (786) 725-4120
                                   Fax:    (786) 725-4121
                                   Email: emurphy@rc.com

                                   ITS ATTORNEYS